IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No.: 1:21-cv-02495-CNS-SKC

WILLIAM AND MARY MARTINEZ

    Plaintiffs,

v.

NATIONWIDE AFFINITY INSURANCE CO. OF AMERICA,
a foreign corporation

    Defendant.

## ORDER RE: IN CAMERA REVIEW OF KABAT COMMUNICATIONS

This matter is before the Court after its *in camera* review of documents that Plaintiffs refuse to produce to Defendant claiming the attorney-client privilege and common interest doctrine. The parties filed a Joint Discovery Dispute Report wherein they made their arguments pertaining to the disclosure of these documents. *See* Dkt. 88. There are two categories of documents: (1) email communications between Plaintiffs, their attorney, and third-party Bruce Kabat; and (2) email communications between Plaintiffs' counsel and Mr. Kabat without Plaintiffs copied on the communications. Plaintiffs have noted their claimed privilege over these communications in a privilege log, which the Court also reviewed. Dkt. 88-3.

1

The Court has considered the arguments of counsel from their Joint Report, the documents reviewed *in camera*, applicable law, and other matters from the docket. No hearing is necessary. The Court construes this dispute as Defendant's motion to compel.

### A. Legal Principles

#### 1. Attorney-Client Privilege

State law governs issues of privilege in cases premised on diversity jurisdiction. Fed. R. Evid. 501; *see also Frontier Refin., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998). In Colorado, the attorney-client privilege is "established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009) (citing *Losavio v. Dist. Ct.*, 533 P.2d 32, 35 (Colo. 1975)). The privilege applies only to communications under circumstances giving rise to a reasonable expectation that they will be treated as confidential. *Tucker*, 232 P.3d at 198 (citing *Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001)). It includes information given to the attorney to enable them to render legal advice. *Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2000). But mere statements of fact are not protected by the attorney-client privilege. *People v. Trujillo*, 144 P.3d 539, 545 (Colo. 2006) (citing *Gordon*, 9 P.3d at 1123) (noting "the privilege protects only the communications to the attorney; it does not protect any underlying and otherwise

2

unprivileged facts that are incorporated into a client's communication to his attorney").

The Colorado Supreme Court has additionally held "that the presence of a third party during an attorney-client communication will ordinarily destroy the attorney-client privilege unless the third party's presence was reasonably necessary to the consultation or another exception applies." *Fox v. Alfini*, 432 P.3d 596, 602 (Colo. 2018). Under this standard, a claim of attorney-client privilege over a communication including a third party requires "*both* that the client have an expectation of confidentiality in the communication *and* that the third party's presence be necessary to facilitate that communication." *Id.* at 601 (emphasis added). The burden of establishing applicability of the attorney-client privilege is on the party claiming the privilege, and the burden of establishing a waiver of the privilege is on the party attempting to overcome the privilege. *Black v. Sw. Water Conservation Dist.*, 74 P.3d 462, 467 (Colo. App. 2003) (citing *Clark v. Dist. Ct.*, 668 P.2d 3, 8 (Colo. 1983)); *see also In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999).

### 2. Common Interest Doctrine

"Colorado and Federal common law both recognize the common-interest doctrine as an exception to the waiver of [attorney-client] privilege" when privileged information is shared with a third-party. *Viesti Assocs., Inc. v. Pearson Educ., Inc.*, No. 11-CV-01687-PAB-DLW, 2013 WL 3825899, at *2 (D. Colo. July 24, 2013). Because there is no federal procedural rule regarding the common interest doctrine

3

(there is only federal common law), the Court must apply Colorado law. *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162–63 (10th Cir. 2017) ("In diversity cases, the Erie doctrine instructs that federal courts must apply state substantive law and federal procedural law."); *see also McCray v. Lockheed Martin Corp.*, 437 F. Supp. 3d 907, 911 (D. Colo. 2020) ("In diversity cases, federal courts apply state law and must defer to the decisions of the controlling state's highest court."), *appeal dismissed* (Mar. 23, 2020); Fed. R. Evid. 501.

Under Colorado law, the common interest doctrine is not a stand-alone privilege; it is an exception to the waiver of privilege when privileged information is shared with third parties. *Ritter v. Jones*, 207 P.3d 954, 960 (Colo. App. 2009) (no waiver of shared work product due to common interest doctrine); *Black*, 74 P.3d at 469 (no waiver of shared attorney-client communications due to common interest doctrine). Under the doctrine, "[c]ommunications shared with third persons who have a common legal interest with respect to the subject matter thereof will be deemed neither a breach nor a waiver of the confidentiality surrounding the attorney-client relationship." *Black*, 74 P.3d at 469. The doctrine applies only to communications made in confidence and "intended and reasonably believed to be part of an on-going and joint effort to set up a common legal strategy." *Id.*

### B. Analysis

The Court has reviewed the Public Adjuster Contract, Dkt. 59-1, between Plaintiffs and Mr. Kabat or his entity. Per the Contract, Plaintiffs hired Mr. Kabat

4

"to advise and assist in the adjustment of their insurance claim with Nationwide[.]" *Id.* (Opening Paragraph). They agreed to pay him a fee equal to 7% to 10% of the amount of all sums collected from Nationwide, including those resulting from any litigation. Dkt. 59-1 at ¶¶1, 1a. Mr. Kabat's services also included "consulting on dwelling, personal property, and additional living expense coverages." *Id.* at ¶2. This Contract contained "the whole agreement between the parties hereto and shall and not be changed, altered or amended." *Id.* at ¶7.

### 1.   Application of the Attorney-Client Privilege

There is no dispute that the attorney-client privilege applies to Plaintiffs' communications with their attorneys. The question is whether the privilege was waived for the three-way communications involving Plaintiffs, their counsel, and Mr. Kabat.

As mentioned, the Court reviewed the disputed documents *in camera*. From this review, the Court finds no credible indication that Mr. Kabat's "presence" in those communications was reasonably necessary to facilitate those discussions. For example, in those emails, Mr. Kabat conveys no specialized knowledge to legal counsel to suggest he is necessary to those communications. Instead, by and large, he operates as a "middleman" merely relaying information between Plaintiffs and their counsel, or communicating facts regarding Plaintiffs' fire loss, their insurance claim, and Nationwide's claims-handling activity.

For example, Mr. Kabat emailed Plaintiffs and their legal counsel a draft letter to send to Nationwide—in a March 25, 2021 response from legal counsel to Mr. Kabat, counsel writes that he "made changes and tracked them, *based on my knowledge of the claim and what was testified to* by Bill and Mary at the EUO's." (PL000482-84) (emphasis added). This email is notable because it highlights that Mr. Kabat's presence was not reasonably necessary to counsel's representation based on counsel's independent knowledge of the claim and his client's EUO testimony.

Other emails demonstrate Mr. Kabat's role as a mere "middleman." In one example involving a May 3, 2021 email (PL000517) from Mr. Kabat to legal counsel (copying Plaintiff Mr. Martinez), Mr. Kabat says: "Speaking to [Mr. Martinez] at the moment as I type this email. He would like for us to convey to opposing counsel the following: . . ." The email then goes on to convey facts Mr. Martinez provided to Mr. Kabat about a bank account, a notebook, and certain photos. Similarly, in a May 25, 2021 email (PL000469), Mr. Kabat (copying Plaintiff Mr. Martinez) provides counsel with a timeline of events regarding the adjustment of Plaintiffs' claim (to include summaries from his notes regarding the fire loss) and indicating he is "[c]opying [Mr. Martinez] here as well as he may have a significant item or items to add to my list below."

The Contract and emails the Court reviewed plainly show that Plaintiffs hired Mr. Kabat to advise and assist them with the adjustment of their insurance claim. Dkt. 59-1. There is no credible indication from either the Contract or the emails that

6

Mr. Kabat's role was reasonably necessary for Plaintiff's to receive legal advice from their attorneys. *See Fox*, 432 P.2d at 602; *Nat'l Farmers Union Prop. & Cas. Co. v. Dist. Ct. for City & Cty. of Denver*, 718 P.2d 1044, 1049 (Colo. 1986) (holding the attorney-client privilege protects communications made to the attorney to enable him to give sound and informed legal advice).

To be sure, even Mr. Kabat testified in his deposition that his involvement with Plaintiffs' insurance claim was "helpful, but not necessary." Dkt. 88-1 at CM/ECF pp.5-6. *See United States v. Ackert*, 169 F.3d 136, 139-40 (2d Cir. 1999) (attorney's communications with client's investment banker, even though made to enable attorney to provide informed legal advice to the client, were not privileged; investment banker was not acting as an expert translator or interpreter of communications between attorney and client); *In re G-I Holdings Inc.*, 218 F.R.D. 428, 436 (D.N.J. 2003) ("Communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the ability to represent the client."); *Evergreen Trading, LLC ex rel. Nussdorf*, 80 Fed. Cl. 122, 129-30 (2007) (communications between client's attorney and client's accountant may be privileged if for the purpose of obtaining legal advice, but when client just hired accountant to help with preparation of tax returns, communications between attorney and accountant are not privileged).

At first blush, the cases cited by Plaintiffs in support of upholding the privilege to these emails appear on all fours. But Nationwide correctly analyzes that these cases draw a distinction between those involving preservation of the privilege when an entity client communicates with its counsel through an agent, versus an individual client. "[U]nlike the individual client, a corporation cannot speak directly with its lawyers – it must do so through its agents." *Affiniti Colorado, LLC v. Kissinger & Fellman, P.C.*, 461 P.3d 606, 614 (Colo. App. 2019).

For example, in *Alliance Const. Sols., Inc. v. Dep't of Corr.*, 54 P.3d 861, 862 (Colo. 2002), the issue before the Colorado Supreme Court was "whether communications between a governmental entity's independent contractor and the entity's counsel are protected by the attorney-client privilege." Similarly, *GSL Grp., Inc. v. Travelers Indem. Co.*, No. 18-CV-00746-MSK-SKC, 2020 WL 4282291, at *6 (D. Colo. July 24, 2020), involved a public adjuster hired by the plaintiff entity who communicated with plaintiff's legal counsel. *See also American. Ins. Co. v. Pine Terrace Homeowners Ass'n*, No. 20-CV-00654-DDD-KMT, 2021 WL 2036541, at *3 (D. Colo. May 21, 2021) ("Just as in *GSL*, C3 Group's role here is consistent with the public adjuster acting as the HOA's agent for purposes of analyzing the attorney-client privilege."); *Markwest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, No. 05CV01948PSFPAC, 2007 WL 1106105, at *4 (D. Colo. Apr. 12, 2007) (involving an outside claims adjuster hired by an insurance company who sought legal advice concerning a prior claim decision).

None of these cases involve three-way communications between an individual client, their attorney, and a third party. Based on the Colorado Supreme Court's holding in *Fox*, this distinction matters. Plaintiffs have not directed this Court to any authority applying the principles involved when an entity client and its third-party agent communicate with counsel, to a case involving an individual client and a third party. Nor has the Court found any.

For these reasons, the Court finds Plaintiffs have waived the attorney-client privilege as to the emails the Court reviewed *in camera* because Mr. Kabat's presence was not reasonably necessary to legal counsel's representation of the Plaintiffs.[1] *See generally Fox, supra*. Thus, these communications are discoverable unless an exception to waiver applies. Here, Plaintiffs claim the common interest legal doctrine.

### 2.     Application of the Common Interest Legal Doctrine

Plaintiffs argue they share a common legal interest with Mr. Kabat such that his presence on the emails with their attorneys does not effectuate a waiver of the attorney-client privilege. Plaintiffs rely on the "nearly identical circumstance to the one at hand" which my colleague, Magistrate Judge Michael Hegarty, addressed in *Martinez v. Liberty Ins. Corp.*, No. 15-CV-00838-REB-MEH, 2015 WL 5915415, at *1 (D. Colo. Oct. 9, 2015). The plaintiffs in *Martinez* retained Matrix, a public adjusting firm, to assist them in submitting an insurance claim to the defendant involving

---

[1] As a result, the Court also finds no privilege inures to the communications between Mr. Kabat and legal counsel in which Plaintiffs were not copied.

9

damage to their home. The plaintiffs also retained an attorney to aid with their insurance claim. After the insurer denied the claim, the plaintiffs sued the insurer in federal court. When the defendant served a Rule 45 subpoena on non-party Matrix for its entire file concerning the property, the plaintiffs sought to quash it arguing certain documents in the file contained attorney-client privileged communications or protected work product. *Id.* at *2. The plaintiffs argued that because Matrix was their agent or representative, they did not waive any privilege when they shared their attorney communications with Matrix. *Id.* at *4.

Judge Hegarty first observed that a "review of Colorado case law reveals that courts have found the privilege attaches to corporations and that, because corporations must act through agents, the privilege is not waived when communications occur between the lawyer and corporate agents." *Id.* He then noted, however, "[b]ut, the Court found no cases in Colorado standing for the proposition that a representative or agent of an individual client is not a 'third party' for purposes of determining whether the privilege is waived."[2] *Id.* Judge Hegarty proceeded to apply the common interest doctrine, finding that because the plaintiffs' retained the attorney and Matrix "to assist them in securing insurance benefits from Defendant, the Plaintiffs, their attorney, and Matrix engaged in a common legal interest under Colorado law." *Id.* at *5.

---

[2] The *Martinez* decision pre-dates the *Fox* decision.

"While this court has the utmost respect for the judicial officers in this District, the court is not bound by their respective unpublished decisions." *Byron-Amen v. State Farm Mut. Auto. Ins. Co.*, No. 21-CV-02364-NYW, 2022 WL 1567563, at *9 (D. Colo. May 18, 2022), *reconsideration denied*, No. 21-CV-02364-NYW-NRN, 2023 WL 2632783 (D. Colo. Mar. 24, 2023) (citing *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 904 n.1 (10th Cir. 2015)). This Court respectfully disagrees with the analysis in *Martinez* and is instead persuaded by those cases which analyze the common interest doctrine taking into consideration the respective legal interests of those claiming commonality, which does not appear to have been considered by the *Martinez* Court.

The common interest doctrine considers the respective legal interests of those subject to the doctrine. For example, in *Black v. Sw. Water Conservation Dist.*, 74 P.3d at 465, the three entities claiming a common interest all shared in the costs to maintain the Animas-La Plata Project that was in dispute, they each had an interest in promoting the project, and they signed an agreement whereby they would be represented by the same public relations and lobbying firm. *Id.* at 470. On these facts, the appellate court found the common interest doctrine applied to protect their shared communications because of their respective shared legal interests. *Id.*; *see also Keybank Nat'l Ass'n v. Williams*, No. 19-CV-03714-CMA-SKC, 2022 WL 278516, at *3 (D. Colo. Jan. 31, 2022) ("[g]iven the nature of this case—enforcement of trade secret and non-solicitation agreements—Defendants and Newmark shared a common

11

legal interest in ensuring Defendants' hiring and employment with Newmark complied with Defendants' restrictive covenants, and in developing factual and legal defenses if later accused of violating those agreements.") (cleaned up); *Murphy v. Schaible, Russo & Co., C.P.A's, LLP*, No. 19-CV-02808-WJM-NYW, 2020 WL 12698695, at *4 (D. Colo. Nov. 20, 2020) ("[T]his court finds that Mr. Schaible and Michael Schaible may share a common legal interest because Plaintiff's allegations inextricably link the two brothers in a purported scheme to deprive her of certain marital assets[.]").

It is critical that the parties' respective shared interests be "legal" interests; neither common financial interests nor a common adversary will alone suffice. *Murphy*, 2020 WL 12698695, at *3; *Arkansas River Power Auth. v. The Babcock & Wilcox Co.*, No. 14-CV-00638-CMA-NYW, 2016 WL 192269, at *9 (D. Colo. Jan. 15, 2016); *see also Black*, 74 P.3d at 470. The point is nicely illustrated in *Arkansas River Power Auth.*, *supra*. There, non-party Syncora and plaintiff ARPA claimed a common interest to avoid waiver of any privilege around communications they shared about a draft expert report Syncora had from a prior lawsuit against Trinidad. Syncora later gave the draft expert report to ARPA for ARPA's subsequent lawsuit against B&W. *Id.* at *8. The trial court found the common interest doctrine did not apply because Syncora's and ARPA's common interests were financial, not legal:

> Despite Syncora and ARPA's agreement that they have agreed to proceed under a common interest, the court is not persuaded, based on the record before it, that there is a common *legal* interest, rather than a common *financial* interest. Syncora did not contract with B&W; it did

12

> not rely upon B&W's alleged misrepresentations to its detriment; and Syncora did not (and most likely, could not) sue B&W. ARPA was not a party to the action by Syncora against Trinidad. Syncora and ARPA's shared objective is "to maximize ARPA's recovery of damages," which is not a legal interest but a financial one, and should not be the basis for extending either the attorney-client privilege or work product immunity.

*Id.* at *9. The Court finds this analysis persuasive because it considers the respective legal interests of those seeking to avail themselves of the common interest doctrine to determine whether the doctrine applies.

Doing that here, Plaintiffs argue the common legal interest shared between them and Mr. Kabat "is the securing of insurance benefits for the Martinezes from the Defendant." Dkt. 88 at p.14. But the mere "securing of insurance benefits" is a financial interest, not a legal one. *See Arkansas River Power Auth.*, 2016 WL 192269, at *9 (rejecting a common interest based on a common financial interest in maximizing a party's recovery of damages in litigation); *Zepter v. Dragisic*, 237 F.R.D. 185, 190 (N.D. Ill. 2006) (rejecting a common interest based on a common financial interest in settling the case). Moreover, the only other interest it appears Mr. Kabat could claim is his interest in his fee calculated on the sums Plaintiffs collect from Nationwide. But this too is a financial interest. Mr. Kabat did not contract with Nationwide, he is not an additional insured under the applicable policy, and as found above, his involvement was not reasonably necessary to Plaintiffs' attorneys' legal representation. Accordingly, the Court finds the common interest legal doctrine does not apply to vitiate Plaintiffs' waiver of the attorney-client privilege.

\* \* \*

For the reasons shared above, Plaintiffs have waived the attorney-client privilege over those emails the Court reviewed *in camera*. It is **ORDERED** that Plaintiffs produce those emails to Nationwide on or before July 28, 2023.

Regarding the separate dispute over the production of Mr. Donahue's native .esx file, the Court finds the information in that file is relevant and proportional for discovery purposes. It is **ORDERED** that Plaintiffs produce the same to Nationwide on or before July 28, 2023. It is **FURTHER ORDERED** that Nationwide (or its experts) shall avoid manipulating the native file in a manner that fails to preserve its data or otherwise results in spoliation of evidence.

Any other relief sought by either party in their Joint Report is **DENIED**.

DATED: July 24, 2023

BY THE COURT:

S. Kato Crews
United States Magistrate Judge